## PETERS v. CRAWFORD.

### No. 6133.

Court of Appeal of Louisiana. Second Circuit.

Nov. 29, 1940.

George Wesley Smith, of Monroe, for appellant.

Madison, Madison & Files, of Bastrop, for appellee.

TALIAFERRO, Judge.

We have considered this case heretofore. The pleadings and issues are at length set out in our former opinion. 185 So. 716. It is a petitory action in which plaintiff sued to have his ownership recognized and possession delivered to him of the following described lands in Morehouse Parish, to-wit: '

South one-fifth of the Northeast quarter of the Southwest quarter (S 1/5 of NE 1/4

of SW 1/4) and South one-fifth of Northwest quarter of the Southeast quarter (S 1/5 of NW 1/4 of SE 1/4) of Section 21, Township 22 North, Range 8 East, containing 16 acres, more or less.

Defendant's plea of thirty years' prescription acquirendi causa was sustained to the extent of the two acres of the South one-fifth of Northeast one quarter of the Southwest quarter (S 1/5 of NE 1/4 of S W 1/4) surrounding the first house erected thereon by him.

The case was remanded for two purposes, to-wit:

(1) To afford opportunity to have the boundaries of said two acres fixed by survey if agreement thereon could not be reached, and

(2) To establish the value of the improvements made and erected by defendant on the remainder of the tracts, including pecan trees.

Trial was had and testimony touching the value of said improvements was adduced by both sides. The boundaries of the two-acre tract were not established and no effort was made to do so. Therefore, the new record is barren of any evidence pertinent to this question. As to this small area, no change in the status quo was wrought by the remand. Each side contends that it was the duty of the other to establish the boundaries.

Defendant, in the alternative, by way of reconvention, sued to recover the value of improvements made and erected by him on the South one-fifth of the Northeast quarter of the Southwest quarter (S 1/5 of NE 1/4 of SW 1/4) as follows:

Clearing land of timber and reducing it to state of cultivation ................. $ 200.00
Buildings, outhouses and fences, labor and material 1500.00
Planting out, labor and material, 25 pecan trees...... 500.00

On the South one-fifth of the Northwest quarter of the Southeast quarter (S 1/5 of NW 1/4 of SE 1/4):

Planting out, labor and material, 20 pecan trees...... 400.00
Clearing and putting the land in cultivation............. 100.00
Labor and material for fencing ....................... 150.00

Total ................... $2,850.00

He prays that he be not dispossessed until judgment for said amount has been satisfied.

Plaintiff did not sue to recover any amount for the use of the land prior to nor after filing suit. He acquired it in 1935. This suit was instituted in April, 1936. He would not, under any circumstances, be entitled to recover for the use of the land nor for the value of timber removed therefrom prior to his acquisition of it.

Plaintiff was recognized as the owner of the lands, and the court specifically overruled the plea of prescription which this court had previously sustained. Defendant was given judgment for $250 as the value of forty-seven (47) pecan trees and was allowed to remove all other improvements within ninety (90) days. Each side was cast for one-half of the court costs. Feeling aggrieved, defendant appealed.

So far as concerns the two acres to which the plea of prescription has been sustained by this court, its status was fixed by our former decree and the lower court was without power or jurisdiction to alter or change that status. The reason assigned by the court for overruling the plea is that it was defendant's duty to definitely establish the boundaries of the two acres, and not having done so, the plea is untenable. Our view of this phase of the case is that defendant is the owner of the two acres, the boundaries of which necessarily are left to future determination.

Defendant complains of the judgment in these respects, to-wit: That the court was without power to overrule the plea of prescription formerly sustained; that the value of the pecan trees should have been fixed at $20 each, the amount sued for; and that the value of the other improvements should have been fixed in accordance with the testimony and judgment for all of said values rendered in his favor.

Plaintiff, in argument, takes the position that as no market value of the pecan trees has been established nor the rental value of the land on which same are located proven, no award whatever on this score should have been made in defendant's favor. In other respects, he is satisfied with the judgment. As plaintiff did not appeal and has not answered defendant's appeal, no amendment of the judgment in his favor is permissible.

Defendant, including the two acres adjudged to him under the plea of prescription, cleared and put in a state of cultivation twelve acres of the land. Clearing land of this character costs different amounts per acre, dependent upon the methods employed, character of timber thereon and prices of labor, but usually the cost does not exceed $10 per acre. We think defendant employed the method that cost him the minimum. The testimony sustains the contention that this clearing should not have cost more than $10 per acre.

The testimony bearing upon the present value of the dwelling house is very much at variance. It ranges from $400 to $1,000. This residence was erected twenty-three (23) years ago. It is built of cypress, a very fine, long lived building material. It consists of four rooms, two being 16' x 16' and two being 8' x 16'; a hallway 8' wide; a front porch 40' x 8'; and a kitchen and dining room measuring 16' x 20'. The roof is made of heart cypress shingles; the windows are of glass and the chimney brick. Needed repairs would cost less than $50. All things considered, we feel certain this residence has a present value of at least $750. It has a life expectancy of not less than twenty-five (25) years if kept in a fair state of repair.

The value of the barn is shown to be $50 and the fencing $35. These values are arrived at by taking the average of that given by the several witnesses.

The decided preponderance of the testimony supports a value of $20 for each of the pecan trees. The grove is twenty (20) years old and consists of two seedlings, eight Schleys and thirty-seven Stuarts. These species are among the very best. Their fruit brings top market prices. The entire grove covers between three and four acres.

Defendant testified that since the trees began to bear full fruitage, ten years ago, they have yielded an annual gross average return of from $200 to $250. During this time there was only one complete crop failure. Other persons who are engaged in commercial pecan production testified that their efforts are profitable and that a tree twenty years old should, when a fair crop is produced, yield fruit worth $5; that a tree should pay for itself in five or six years under normal conditions. One planter with 150 producing trees on his plantation, testified that out of fifteen consecutive years he had suffered but two crop failures. His trees and those of defendant are of

the same species and are about the same age.

Two witnesses for plaintiff have been unsuccessful in their efforts to produce pecans. One rents lands on which there are twenty-seven trees. He thinks they are a useless burden to the land. It does not appear that these trees have been given the care and attention necessary to expect fair results. The other witness planted forty or fifty trees which are now from twenty-five to thirty years of age. These, he says, have not been profitable. However, he testified, "of course, they have not received the care and attention that a tree would on a man's place". He declined to place a value on defendant's trees.

It requires years of effort and attention and no little expense to grow to full fruitage a grove of young pecan trees. The maximum of growth and results are not attained by simply setting the plant in the ground and risking rain and sunshine alone to do the rest. Cultivation of the land, spraying and pruning the trees and keeping them free of insect enemies are indispensable to their steady progress and early and continuous fruit bearing.

Because those persons who pursue slipshod methods in their efforts to produce pecans derive no profits therefrom does not prove that had scientific and systematic methods been employed the results would not have been satisfactory. The converse of the experience of these persons is enjoyed by those who do follow approved standards in the growing, cultivation and caring for trees of their own. Of course, with the best attention and care, now and then, a crop will fail. This is true of all other crops.

To argue that pecan culture may not be made profitable, overlooks the well known fact that throughout the country thousands of acres of rich land have been and are being yearly planted in pecan trees. The offering of the matured nuts for sale in nearly all of the retail establishments of the country is impressive evidence that a prodigious amount is being produced, for which there is ready demand.

In a manner, it is true, as argued, that these pecan trees have no market value, but in time, labor, attention, etc., they have cost defendant as much as the testimony shows their present value to be. Pecan is a long lived plant. Defendant had the assurance for many years to come that fair dividends therefrom would accrue to him.

We held in our former opinion that defendant's possession of the lands was in good faith.

■ Art. 508 of the Civil Code treats of the rights of the owner of the land and of the third person who erects buildings thereon and/or otherwise improves it. Both sorts of possessors, those in good faith and those in bad faith, are included. In cases of bad faith possessors, the owner may retain the improvements or require their demolition. If retained, he will owe the third person their value without regard to any enhancement in the value of the soil due to their presence. Concerning possessors in good faith, the article says: "Nevertheless, if the plantations, edifices or works have been made by a third person evicted, but not sentenced to make restitution of the fruits, because such person possessed bona fide, the owner shall not have a right to demand the demolition of the works, plantations or edifices, but he shall have his choice either to reimburse the value of the materials and the price of workmanship, or to reimburse a sum equal to the enhanced value of the soil."

■ If the owner would elect to reimburse the amount represented in the enhanced value of the soil, it devolves upon him to adduce satisfactory proof of that value. Roussel v. Railways Realty Co., 165 La. 536–546, 115 So. 742; Foster v. Meyers, 117 La. 216, 41 So. 551; Hutchinson v. Jamison et al. 38 La.Ann. 150.

It is said in the Roussel case [165 La. 536, 115 So. 745]: "As there is no proof of enchanced value of the property resulting from the expenditures of defendant company thereon, said company is entitled to recover the value of such expenditures * * * ."

Citing Durbridge v. Crowley, 44 La.Ann. 74, 10 So. 402.

■ Plaintiff adduced no proof whatever to establish the enhanced value of the soil resulting from the improvements thereto and thereon placed by defendant. In view of this situation, the value of such improvements must serve as the measure of plaintiff's liability therefor.

The quoted portion of the codal article declares that the value of the materials and the price of workmanship must be reimbursed to the evicted possessor if the enhanced value is not availed of. No effort was made to prove the original cost of the material nor the price of the workmanship.

At this late day, such proof could not well be made. The value of the improvements, today, save the pecan trees, does not equal the original cost of the materials plus expense of erection. Due allowance for depreciation has been made in arriving at said values. Plaintiff will have no valid reason for complaint on this score.

Defendant sued only for the value of forty-five (45) trees, but proof was introduced without objection to prove that he has forty-seven (47) trees on the land.

■ It developed on the second trial that the residence is supplied with lighting from a carbide tank buried in the ground some distance from the house. The value of this tank was not sued for, but as it may easily be removed without injury to land or building, defendant's right to remove it will be reserved to him.

A re-statement of the values of the improvements follows:

| | |
|---|---|
| Clearing 10 acres of land | $ 100.00 |
| Residence | 750.00 |
| Barn | 50.00 |
| Fencing | 35.00 |
| Pecan Trees | 940.00 |
| Total | $1,875.00 |

The reconventional demand will be sustained to this extent. We shall have to set aside and recast the judgment of the lower court.

For the reasons herein assigned, the judgment appealed from is annulled, reversed and set aside, and it is now ordered, adjudged and decreed that plaintiff, Cal M. Peters, do have and recover judgment against the defendant, J. Wesley Crawford, recognizing him, the said Peters, as the owner and entitled, subject to this judgment, to possession of the following described lands in the Parish of Morehouse, Louisiana, to-wit: South one-fifth of Northeast quarter of the Southwest quarter (S ⅕ of NE ¼ of SW ¼) and the South one-fifth of the Northwest quarter of the Southeast quarter (S ⅕ of NW ¼ of SE ¼), Section 21, Township 22 North, Range 8 East, containing sixteen (16) acres, more or less, save and excepting the two acres of the South one-fifth of the Northeast quarter of the Southwest quarter (S ⅕ of NE ¼ of SW ¼) surrounding and on which is located the first residence erected by defendant, and which was adjudged to him in the former opinion and decree of this court.

It is further ordered, adjudged and decreed that defendant, J. Wesley Crawford, do have and recover judgment in reconvention against the plaintiff, Cal M. Peters, for the sum of Eighteen Hundred and Seventy-Five ($1,875) Dollars, and that his possession of the lands hereby decreed to belong to said plaintiff be not disturbed until this money judgment is satisfied.

It is further ordered, adjudged and decreed that the right to remove the carbide tank be and it is hereby reserved to defendant.

It is also ordered and decreed that costs of court be paid by the parties equally.